OPINION OF THE COURT
Gary F. Knobel. J.
The unopposed motion by defendant Slomin’s, Inc. (hereafter Slomin’s) for an order granting leave to reargue the denial of its prior motion — to dismiss the claim made by plaintiff Raviv, to stay this action and to direct plaintiff/claimant Schiffer to proceed to arbitration — is granted (see Foley v Roche, 68 AD2d 558, 567-568 [1979]). Upon reargument, for the reasons stated below, the court adheres to its order dated February 14, 2013 (39 Misc 3d 414 [2013, Knobel, J.]), which denied the relief requested by defendant in its entirety.
This is a small claims action to recover $5,000 in damages from defendant Slomin’s for an alarm and security system installed by the defendant in plaintiffs residence. Plaintiffs claim, under theories of fraud, breach of contract, and breach of warranty, that inter alia defendant’s salesperson changed the original contract by adding a contract which authorized the payment of alarm and security services to plaintiff Raviv’s credit card.
In its motion for reargument, defendant Slomin’s raises another legal question of first impression: does the Federal Arbitration Act preempt the application of General Business Law § 399-c (which prohibits the use of clauses which mandate arbitration to resolve disputes in contracts for the sale or purchase of consumer goods)[1] to the arbitration clause in a contract between a consumer/homeowner and an alarm company *886 for the purchase of equipment for, and the continued monitoring of, a home security system?
Consumers do not appear to be aware of the increasing trend of the insertion of mandatory arbitration clauses in contracts for, e.g., the purchase and installation of goods. Nor are consumers apparently aware of the protection afforded to them in New York under General Business Law § 399-c. However, the majority and per curiam opinions in applicable United States Supreme Court cases since 2011 declare that the Federal Arbitration Act preempts and renders unenforceable any state law, such as General Business Law § 399-c, which curbs or prohibits arbitration clauses in contracts to the exclusion of all other provisions in those contracts, regardless, apparently, of whether or not the particular contract involves interstate commerce (see Nitro-Lift Technologies, L.L.C. v Howard, 568 US —, 133 S Ct 500 [2012]; Marmet Health Care Center, Inc. v Brown, 565 US —, 132 S Ct 1201 [2012]; AT&T Mobility LLC v Concepcion, 563 US —, 131 S Ct 1740 [2011]). In contrast, the existing law in New York is the test adopted by the New York Court of Appeals: that the contract must affect interstate commerce, or that there must be a sufficient nexus to interstate commerce, as a predicate before determining whether the Federal Arbitration Act governs a par *887 ticular contract or case (see Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp., 4 NY3d 247 [2005]).
The arbitration clause in question here, which was slipped into the fine print of the sixteenth line of paragraph 15 of defendant Slomin’s alarm contract, states that “[a]ny action or dispute between the parties, including issues of arbitrability, shall, at the option of either party, be determined by arbitration administered by Arbitration Services, Inc., under its Commercial Arbitration Rules found at www.natarb.com.” In a decision of first impression, this court denied defendant’s original motion to compel arbitration, and held that the arbitration clause was in violation of General Business Law § 399-c and thus unenforceable since it was an attempt to “ circumvent [ ] the intended benefit of General Business Law § 399-c [for] consumers to have the right to seek judicial resolution of a dispute through a small claims or regular civil action” (Schiffer v Slomin’s, 39 Misc 3d 414, 418 [Nassau Dist Ct 2013]).
The importance and applicability of General Business Law § 399-c to the arbitration clause at bar was raised and researched by this court and not the parties. The Federal Arbitration Act was only mentioned in the original motion papers by defendant’s counsel in the notice of motion for an order directing arbitration pursuant to “9 USCS sections 3 and 4” and in counsel’s affirmation that simply cited GAF Corp. v Werner (66 NY2d 97 [1985]), and argued that the Federal Arbitration Act “authorized [this court] to entertain a motion to compel arbitration.”
In addition to the original affirmation there was also an affidavit submitted in the prior motion by “the Credit Manager of Slomin’s Inc.” and “keeper of records for Slomin’s,” who averred in pertinent part that
“Slomin’s sells, installs services and monitors alarm and security systems in New York, New Jersey, Connecticut, Pennsylvania, Delaware, Maryland, Virginia, Georgia and the District of Columbia and has employees and is licensed as an alarm business in those states. Slomin’s has offices located in New York, New Jersey, Pennsylvania, Maryland and Georgia. Slomin’s security business constantly crosses state lines. Slomin’s advertises on television, on the radio, in newspapers and magazines, and on the internet. Slomin’s does business online through its interactive website, www.slomins.com, which *888 even allows customers to sign contracts there electronically. Slomin’s monitors its customers alarm systems throughout many states through phone lines, radio and internet. The components of Slomin’s alarm systems are purchased from different parts of the country: wire from keystone wire in Pennsylvania and Paige Electric in Pennsylvania, peripherals from suncoast distributing in Florida, and wireless transmitters from Georgia.”
There was no proof submitted to substantiate the claims by the credit manager, who notarized her affidavit in Suffolk County, nor did she say whether she was the credit manager for all Slomin’s, or just New York, or just Nassau or Long Island.
Moreover, in the original motion there was no connection made between the credit manager’s statement and New York and United States Supreme Court precedent which could serve as the basis to compel arbitration pursuant to the Federal Arbitration Act.
Counsel for defendant Slomin’s now argues in the motion to reargue at bar that General Business Law § 399-c is preempted by the Federal Arbitration Act, and in support thereof relies upon the watershed 2011 United States Supreme Court 5-4 decision in AT&T Mobility LLC v Concepcion (563 US —, 131 S Ct 1740 [2011]). The Concepcions entered into a cellular telephone agreement with AT&T Mobility LLC which provided for the arbitration of all disputes between the parties and that the claims be made in an individual capacity and not as part of a class. Justice Scalia, writing on behalf of the majority (Justice Breyer authored the dissent), found that the Federal Arbitration Act preempted California’s Discover Bank rule, which provided that a class-action waiver, contained in a mandatory arbitration agreement in a consumer contract, is unconscionable and unenforceable (Discover Bank v Superior Ct, 36 Cal 4th 148, 113 P3d 1100 [2005]). The majority’s rationale was “straightforward”: “[w]hen state law prohibits outright the arbitration of a particular type of claim . . . [t]he conflicting rule is displaced by the [Federal Arbitration Act]” (AT&T Mobility LLC v Concepcion, 563 US —, —, 131 S Ct 1740, 1747 [2011]). It was not disputed that the AT&T contract affected interstate commerce, unlike the contracts in subsequent Supreme Court per curiam decisions in Nitro-Lift Technologies, L.L.C. v Howard (568 US —, 133 S Ct 500 [2012]) and Marmet Health Care Center, Inc. v Brown (565 US —, 132 S Ct 1201 [2012]), which do not appear to have any connection to interstate com *889 merce. In Nitro-Lift and Marmet the Supreme Court admonished state courts for not following the High Court’s interpretation of the Federal Arbitration Act regarding state prohibition of arbitration, e.g., “the Oklahoma Supreme Court must abide by the [Federal Arbitration Act], which is ‘the supreme Law of the Land’ “once [this] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law” (Nitro-Lift Technologies, L.L.C. v Howard, 568 US —, —, 133 S Ct 500, 503 [2012]).
The Federal Arbitration Act, “enacted in 1925 in response to widespread judicial hostility to arbitration agreements” (see AT&T Mobility LLC v Concepcion, 563 US —, —, 131 S Ct 1740, 1745 [2011]), evinces Congress’ intent to establish “ ‘an “emphatic” national policy favoring arbitration which is binding on all courts, State and Federal’ ” (Matter of Ayco Co. [Walton], 3 AD3d 635, 637 [2004], appeal dismissed and lv denied 2 NY3d 786 [2004], quoting Singer v Jefferies & Co., 78 NY2d 76, 81 [1991]; see American Express Co. v Italian Colors Restaurant, 570 US —, 133 S Ct 2304 [June 20, 2013]; Nitro-Lift Technologies, L.L.C. v Howard, 568 US —, —, —, 133 S Ct 500, 501, 503 [2012 per curiam]; Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc., 473 US 614, 624, 631 [1985]; Dean Witter Reynolds Inc. v Byrd, 470 US 213, 219, 221 [1985]; Southland Corp. v Keating, 465 US 1, 10 [1984]; Moses H. Cone Memorial Hospital v Mercury Constr. Corp., 460 US 1, 24 [1983]). The Federal Arbitration Act “embod[ies] ... a liberal federal policy favoring arbitration agreements . . . [having as its] prime objective . . . streamlined proceedings and expeditious results” (AT&T Mobility LLC v Concepcion, 563 US at —, 131 S Ct at 1749 [internal quotation marks and citations omitted]). However, what is not mentioned in Supreme Court decisions is that there is no right to appeal an arbitrator’s decision.
The lynchpin of the Federal Arbitration Act is contained in section 2, which provides, in pertinent part, that
“[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or *890 in equity for the revocation of any contract” (9 USC § 2 [emphasis added]).
“This text reflects the overarching principle that arbitration is a matter of contract” (American Express Co. v Italian Colors Restaurant, 570 US at —, 133 S Ct at 2309). The statute defines “commerce” to include “commerce among the several States” (9 USC § 1). The words “involving commerce” in section 2 were broadly interpreted by the United States Supreme Court in Allied-Bruce Terminix Cos. v Dobson (513 US 265, 273-274 [1995]) to be the functional equivalent of “affecting commerce,” thus signaling Congress’ intent to fully exercise its Commerce Clause powers to encompass a wide range of transactions “within the flow of interstate commerce.” (Allied-Bruce Terminix Cos. v Dobson at 273-274, 276 [emphasis omitted]; see Citizens Bank v Alafabco, Inc., 539 US 52, 56 [2003].) “Congress’ Commerce Clause power ‘may be exercised in individual cases without showing any specific effect upon interstate commerce’ if in the aggregate the economic activity in question would represent ‘a general practice . . . subject to federal control’ ” (Citizens Bank v Alafabco, Inc. at 56-57, quoting Mandeville Island Farms, Inc. v American Crystal Sugar Co., 334 US 219, 236 [1948]).
Justice Breyer, writing on behalf of the rest of the majority (Justices Rehnquist, Stevens, O’Connor, Kennedy, Souter and Ginsburg) in Allied-Bruce Terminix Cos. v Dobson (513 US 265, 280 [1995]), stated in dicta that when Congress enacted the Federal Arbitration Act in 1925, it “had the needs of consumers ... in mind ... by avoiding ‘the delay and expense of litigation’ ” since “arbitration ... is usually cheaper and faster than litigation [and] can have simpler procedural and evidentiary rules . . . .” The Court even referenced “the typical consumer” with a stereotypical “small damages claim [seeking] the value of only a defective refrigerator or television set,” but that the costs and delays involving court litigation “could eat up the value of an eventual small recovery” (Allied-Bruce Terminix Cos. v Dobson at 281).
Again, there is no mention by the Court that the small claims litigant waives her right to appeal the arbitration, or that it is very difficult to vacate an arbitrator’s decision in a binding arbitration proceeding. Of critical import, however, was the majority’s holding in the subsequent paragraph of Allied-Bruce which bluntly explains how states run afoul of the Federal Arbitration Act:
“§ 2 [of the Federal Arbitration Act] gives States a *891 method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause ‘upon such grounds as exist at law or in equity for the revocation of any contract.’ 9 U. S. C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal ‘footing,’ directly contrary to the Act’s language and Congress’ intent” (Allied-Bruce Terminix Cos. v Dobson at 281 [citation omitted]).[2]
However, the majority in Allied-Bruce interpreted the Federal Arbitration Act’s “language as insisting that the ‘transaction’ in fact ‘involv[e]’ interstate commerce, even if the parties did not contemplate an interstate commerce connection” (Allied-Bruce Terminix Cos. v Dobson at 281).
This threshold predicate — that the contract or transaction “involve” interstate commerce — has been the rule adopted in New York by the Court of Appeals and appellate courts (see N.J.R. Assoc. v Tausend, 19 NY3d 597, 601 [2012] [“(t)he Federal Arbitration Act. . . applies to any arbitration provision in a contract that affects interstate commerce”]; Siegel v Landy, 95 AD3d 989, 991 [2d Dept 2012] [“as a general matter, where, as here, an agreement with an arbitration clause does not affect interstate commerce, (it) is therefore not subject to the Federal Arbitration Act”]; see also Kudler v Truffelman, 93 AD3d 549 [1st Dept 2012]). The leading case in New York is Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp. (4 NY3d 247, 252 [2005]) where the Court of Appeals interpreted section 2 of the Federal Arbitration Act and Allied-Bruce to mean that a broad standard must be applied in determining whether a contract has a sufficient nexus with interstate commerce so “where a contract containing an arbitration provision ‘affects’ interstate commerce, disputes arising thereunder are *892 subject to the FAA.” The Court of Appeals concluded that the construction project arising from the contract to repair and reconstruct the entire facade and roof of a nationally land-marked residential building in Manhattan
“affected interstate commerce, triggering application of the [Federal Arbitration Act]. Numerous out-of-state entities were involved in the transaction. The project manual and the engineer’s drawings were created in a joint effort with a structural engineering firm headquartered in Illinois. Diamond Systems’ largest supplier of materials for the project, MJM Studios, Inc., was a New Jersey company, and project meetings and visits were often scheduled at MJM’s offices. The largest supplier of equipment for the project, Dunlop Equipment, Inc., was a Massachusetts company. Further, various additional materials, equipment and services for the project were obtained from Oklahoma, Maryland and Kansas” (id.).
The First Department subsequently, and similarly, held in Carlton Hobbs Real Estate, LLC v Sweeney & Conroy, Inc. (41 AD3d 214, 215 [1st Dept 2007]) that the Federal Arbitration Act applied to the construction contract since the
“project entailed the retention of subcontractors, suppliers, consultants and designers from New Jersey, Connecticut and Europe, and some of the supplies and materials were purchased from, and/or manufactured by, out-of-state entities. In addition, the contractor utilized the services of a New Jersey asbestos monitoring company, which called for the transport of asbestos and other waste from New York to Hackensack for analysis.”
The very broad interpretation by the Supreme Court of section 2 of the Federal Arbitration Act of the clause “involving commerce” has apparently caused New York appellate courts to look beyond the four corners of a particular contract to determine whether the contract “affects” interstate commerce. However, unfortunately, it is not always clear how a court arrived at its conclusion that the “contract” “involved” interstate commerce.
One such case is last year’s Appellate Division, First Department case of Ayzenberg v Bronx House Emanuel Campus, Inc. (93 AD3d 607, 607-608 [1st Dept 2012]), where the Appellate Division found, without explanation,
*893 “that the sale/purchase of the services defendant provided constitutes a transaction ‘involving commerce’ within the meaning of the Federal Arbitration Act (see Citizens Bank v Alafabco, Inc., 539 US 52, 56 [2003]) . . . [and] that to the extent General Business Law § 399-c may prohibit the subject arbitration clause, it is preempted by federal law.”
Unlike most of the cases involving the applicability of the Federal Arbitration Act or General Business Law § 399-c, this was not a breach of contract action. Plaintiff Roza Ayzenberg, 82 years old at the time of the filing of her verified complaint on December 10, 2010, sought to recover damages for the personal injuries (e.g., a fractured wrist requiring surgery) she sustained on July 18, 2010, when she tripped and fell on defendant’s premises located in Copake, New York.
A review of the record on appeal reveals that the plaintiff and her husband enrolled in and attended defendant’s summer vacation program that was designated on the “application/ registration” form as “Trip 3-2010.” According to the plaintiff that vacation program was marketed to survivors of World War II. The defendant’s basic one-page “application/registration” contained the names and address of the plaintiff and her husband, was executed by plaintiffs husband, and had a provision above the signature line which served as the basis for defendant’s motion before the trial court to stay plaintiffs action and compel arbitration:
“I agree that any dispute resulting from my stay at Berkshire Hills Emanuel Camps shall be resolved exclusively by binding arbitration conducted by the American Arbitration Association according to their then current commercial rules. Any such arbitration will take place in Manhattan and the substantive law of New York will apply. The arbitrator’s decision is final and may be entered as judgment in any court having jurisdiction.”
The record further revealed that in opposition to the defendant’s motion to compel arbitration, the plaintiff’s attorney maintained inter alia that the plaintiff did not sign the “agreement,” and that “General Business Law § 399-c prohibits mandatory arbitration clauses in matters involving consumers [such as the plaintiff].” Defendant in turn argued that General Business Law § 399-c was preempted by the Federal Arbitration Act in this instance and that there was a sufficient nexus with interstate commerce to make the arbitration provision in the *894 executed “application” agreement enforceable. In support of this argument and its motion to compel, the defendant submitted an affidavit from its executive director who averred that defendant’s vacation programs were marketed throughout the United States and that they arranged for out of state trips to a venue in the Berkshire Mountains of Massachusetts. However, the purported agreement between the plaintiff and the defendant did not refer to any out of state trips.
In reversing the trial court, the Appellate Division, First Department held that the plaintiff’s husband had apparent authority to bind the plaintiff when he signed the defendant’s “Trip 3-2010” contract and that his wife was bound by its enforceable terms, including the arbitration clause requiring the “arbitration” of “ ‘any dispute resulting from [their] stay at’ defendant’s facility” (Ayzenberg v Bronx House Emanuel Campus, Inc. at 607). Thus, the appellate court found that Roza Ayzenberg’s personal injury claim should have instead been submitted to arbitration. Although it was not necessary for the appellate court to make any further findings, the Court, nonetheless, subsequently made conclusory rulings, as stated above, pertaining to the intersection of the Federal Arbitration Act and General Business Law § 399-c and the preemption of the consumer-oriented New York statute. The Ayzenberg court declined to explain why the parties’ agreement affected interstate commerce and why purchasing a vacation at an adult camp qualifies as consumer goods as contemplated by General Business Law § 399-c.
This court is not bound by the First Department’s unexplained findings in dicta in Ayzenberg, and instead remains bound to follow the prevailing legal standard in New York as set forth by the Court of Appeals in Diamond Waterproofing, which was premised on the United States Supreme Court cases of Allied-Bruce and Citizens Bank: in determining whether a contract falls within the ambit of the Federal Arbitration Act, the trial court must first assess whether the subject contract affects interstate commerce. Although the holdings in more recent United States Supreme Court cases (AT&T Mobility, Marmet and NitroLift) are conceptually inconsistent with Diamond Waterproofing in that they hold that the Federal Arbitration Act displaces any state law, such as General Business Law § 399-c, which “prohibits outright the arbitration of a particular type of claim” (Marmet Health Care Center, Inc. v Brown, 565 US —, —, 132 S Ct 1201, 1203, quoting AT&T Mobility LLC v Concepcion, 563 *895 US —, —, 131 S Ct 1740, 1747 [2011]), these cases do not expressly overrule Diamond Waterproofing or the United States Supreme Court precedents followed by Diamond Waterproofing. They do, however, serve as the strongest legal basis for the preemption of General Business Law § 399-c and a mandate of arbitration.
Nevertheless, this court finds that the Slomin’s contract at bar does not “affect interstate commerce” as that term has been defined and applied by the United States Supreme Court and the New York Court of Appeals, and it is therefore not subject to the Federal Arbitration Act. The singular transaction here of a Nassau County homeowner/consumer, who enters into a contract which will be performed solely at the residence of the homeowner/consumer, and who purchases goods which will be installed and utilized in a security system for his or her personal and property protection at the residence, is not a transaction within the flow of interstate commerce. The Slomin’s contract at bar did not provide any indication that the monitoring of the security system would be provided by Slomin’s in another state other than New York. This is not a cellular phone service contract, such as in the AT&T Mobility case, which clearly implicates and affects interstate commerce as a result of interstate cell phone usage and satellite technology. In the case at bar there is an insufficient nexus with interstate commerce to establish Federal Arbitration Act coverage over the contract, and consequently General Business Law § 399-c’s prohibition of mandatory arbitration in consumer contracts for goods continues to govern the Slomin’s alarm contract in this case.
The parties are directed to proceed to trial to resolve the factual issues stated in the court’s February 14, 2013, decision and order (see Schiffer v Slomin’s, 39 Misc 3d 414, 415-416, 418 [2013]).

. General Business Law § 399-c, enacted almost 30 years ago, prohibits the use of mandatory arbitration clauses in contracts for the sale or purchase of “consumer goods.” It states the following:
“§ 399-c. Mandatory arbitration clauses in certain consumer contracts prohibited
“1. Definitions.
“a. The term ‘consumer’ shall mean a natural person residing in this state.
“b. The term ‘consumer goods’ shall mean goods, wares, paid merchandise or services purchased or paid for by a consumer, the intended use or benefit of which is intended for the personal, family or household purposes of such consumer.
“c. The term ‘mandatory arbitration clause’ shall mean a term or provision contained in a written contract for the sale or *886 purchase of consumer goods which requires the parties to such contract to submit any controversy thereafter arising under such contract to arbitration prior to the commencement of any legal action to enforce the provisions of such contract and which also further provides language to the effect that the decision of the arbitrator or panel of arbitrators in its application to the consumer party shall be final and not subject to court review.
“d. The term ‘arbitration’ shall mean the use of a decision making forum conducted by an arbitrator or panel of arbitrators within the meaning and subject to the provisions of article seventy-five of the civil practice law and rules.
“2. a. Prohibition. No written contract for the sale or purchase of consumer goods, entered into on or after the effective date of this section, to which a consumer is a party, shall contain a mandatory arbitration clause. Nothing contained herein shall be construed to prohibit a non-consumer party from incorporating a provision within such contract that such non-consumer party agrees that the decision of the arbitrator or panel of arbitrators shall be final in its application to such non-consumer party and not subject to court review.
“b. Mandatory arbitration clause null and void. The provisions of a mandatory arbitration clause shall be null and void. The inclusion of such clause in a written contract for the sale or purchase of consumer goods shall not serve to impair the enforceability of any other provision of such contract.”

. In a concurring opinion, Justice O’Connor stated that the Court’s majority ruling in Allied-Bruce would “displace many state statutes carefully calibrated to protect consumers” and that “Congress never intended the Federal Arbitration Act to apply in state courts” (Allied-Bruce Terminix Cos. v Dobson, 513 US 265, 282, 283 [1995, O’Connor, J., concurring]).